UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS A. WEBER AND BELINDA WEBER,<br><br>Plaintiffs,<br><br>v.<br><br>PNC BANK, N.A.; HSBC BANK, U.S.A., N.A.; and DOES 1 to 100 inclusive,<br><br>Defendants. | No. 2:13-cv-00298-TLN-CKD<br><br>**ORDER** |

This matter is before the Court on Defendants PNC Bank and HSBC Bank's (hereinafter collectively referred to as "Defendants") Motion to Dismiss Plaintiffs Thomas Weber and Belinda Weber's (hereinafter collectively referred to as "Plaintiffs") First Amended Complaint (ECF No. 29) and Plaintiffs' Motion for Preliminary Injunction (ECF No. 30).[1] The parties have both filed oppositions and replies to the aforementioned motions. The Court has carefully considered the arguments presented by both parties. For the reasons set forth below, the Court DENIES Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 29) and DENIES Plaintiff's Motion for a Preliminary Injunction (ECF No. 30).[2]

---

[1] Both motions were scheduled for a hearing on July 25, 2013. This matter was submitted without oral argument on July 18, 2013. (Minute Order, ECF No. 35); *see also* E.D. Cal. L. R. 230(g).

[2] Defendants requested that the Court take judicial notice of the Certificate of Merger of National City Mortgage Co. and National City Bank dated October 1, 2008; the Certificate of Merger of National City Corporation with and into The PNC Financial Services Group, Inc. dated December 30, 2008; the Notice of Default recorded

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On August 5, 2010, Plaintiffs entered into a loan modification agreement with Defendant PNC Bank on their primary residence. (First Am. Compl. ("FAC"), ECF No. 24 at ¶ 14.) Pursuant to the modification agreement, the only changes to the underlying Note were to the interest rate, which was altered from an adjustable rate to a step-rate, and removal of the ten year interest only period. (ECF No. 24 at ¶ 15.) The Modification also states that "[a]ll rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments thereunder." (ECF No. 24 at ¶ 15.) On May 3, 2012, an Assignment of Deed of Trust was recorded in which the beneficial rights to the Subject Loan were purportedly transferred to Defendant HSBC. (ECF No. 24 at ¶ 16.)

Plaintiffs fell behind on their payments and HSBC instructed Cal-Western Reconveyance Corp. ("Cal-Western") to record a Notice of Default ("NOD") against the Subject Property on May 3, 2012. (ECF No. 24 at ¶ 18.) The declaration contained in the NOD states that "[t]he mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary pursuant to California Civil Code § 2923.5(b) declares that the mortgagee, beneficiary or the mortgagee's or beneficiary's authorized agent has either contacted the borrower or tried with due diligence to contact the borrower as required by California Civil Code 2923.5." (ECF No. 24 at ¶ 20.) Plaintiffs allege that the declaration is false and fraudulent. (ECF No. 24 at ¶ 20.) Specifically, Plaintiffs argue that the NOD is invalid because "PNC and HSBC failed to contact Plaintiffs, including through any of their agents, in person or by telephone to discuss their financial status and explore their alternatives to foreclosure, such as modification, deed-in-lieu and short sale, at least 30 days prior to recording the NOD as required by California Civil Code § 2923.5." (ECF No. 24 ¶ 19.) In response, Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) (ECF No. 29), and Plaintiffs have moved this Court to preliminary enjoin Defendants from selling,

---

April 22, 2010 in the Official Records of Placer County as Document Number 2010-0030194-00; and the Notice of Rescission recorded July 6, 2010 in the Official Records of Placer County as Document Number 2010-0050609-00. (ECF No. 29-2.) "Under Federal Rule of Evidence 201(b), a court may take judicial notice of matters of public record." *Reynolds v. Hedgpeth*, 472 F. App'x 595, 598 (9th Cir. 2012) (internal quotation marks omitted). The Court finds that because these documents are matters of public record that judicial notice is appropriate.

transferring, conveying or foreclosing upon their residence, including but not limited to restraining and enjoining Defendants from proceeding with foreclosure and any trustee's sale of the property.  (ECF No. 30.)

## II.   STANDARDS OF LAW

### a.  Motions for 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true.  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff has failed to nudge his or her claims "across the line from conceivable to plausible," is the complaint properly dismissed. *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570). While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

**b. Preliminary Injunction**

The general standard for granting injunctive relief requires balancing a plaintiff's likelihood of success on the merits against the relative hardships to the parties. *Benda v. Grand Lodge Int'l Assoc. Machinest*, 584 F.2d 308, 315 (9th Cir. 1978). This balancing is a continuum, wherein the required showing of irreparable harm varies inversely with the probability of success. *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005). The Supreme Court clarified the proper standard for granting or denying a preliminary injunction stating that "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). "Alternatively, a court may issue a preliminary injunction if the moving party demonstrates '*either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor.'" *Martin v. Int'l Olympic Comm.,* 740 F.2d 670, 675 (9th Cir. 1984) (quoting *William Inglis & Sons Baking Co., Inc. v. ITT Continental Baking Co.*, 526 F.2d 86, 88 (9th Cir. 1975) (emphasis in original)). With these rules in mind, the Court turns to the present case.

**III.  ANALYSIS**

**a. Motion to Dismiss**

California Civil Code § 2923.5(a)(1)−(A) states

> A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until both of the following: (A) Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e).

The due diligence exception in subdivision (e) allows a notice of default to be filed without actual contact if the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent has completed the following:

> (1) A mortgage servicer shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing

5

counseling agency.

   (2) (A) After the letter has been sent, the mortgage servicer shall attempt to contact the borrower by telephone at least three times at different hours and on different days. Telephone calls shall be made to the primary telephone number on file.

   (B) A mortgage servicer may attempt to contact a borrower using an automated system to dial borrowers, provided that, if the telephone call is answered, the call is connected to a live representative of the mortgage servicer.

   (C) A mortgage servicer satisfies the telephone contact requirements of this paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.

   (3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgage servicer shall then send a certified letter, with return receipt requested.

   (4) The mortgage servicer shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.

   (5) The mortgage servicer has posted a prominent link on the homepage of its Internet Web site, if any, to the following information.

California Civil Code § 2923.5(e)(1)−(5). As such, California law requires a lender to contact the borrower or to diligently attempt to contact the borrower to explore options to prevent foreclosure before filing a notice of default. *See* Cal. Civil Code § 2923.5(a)(1)−(2).

      The Plaintiffs allege that Defendants failed to fulfill this requirement before filing the NOD. (ECF No. 24 at ¶¶ 19, 20, 34.) In response, Defendants cite *Quintero Family Trust v. OneWest Bank, F.S.B.*, 09-CV-1561-IEG (WVG), 2010 WL 392312 (S.D. Cal. Jan. 27, 2010), contending that Plaintiffs' allegations that Defendants did not contact them or make efforts to contact them are insufficient to question the accuracy of the declaration that was attached to the NOD. (ECF No. 29-1 at 4.) The Court finds Defendants' reliance on *Quintero* misplaced.

      In *Quintero*, the court held that "[p]laintiffs failed to allege facts sufficient to state a cause of action for violation of Section 2923.5" because the statute only requires "[d]efendants

1  to contact or attempt to contact [p]laintiffs in a good faith effort to avoid foreclosure." *Quintero*,
2  2010 WL 392312, at *14 (citing *Ortiz v. Accredited Home Lenders, Inc.*, 639 F. Supp. 2d 1159,
3  1166 (S.D. Cal. 2009)).  Specifically, the court found that plaintiffs alleged that the defendants
4  failed to contact them before filing the notice of default, but did not address whether defendants
5  had diligently attempted to contact them.  The notice of default submitted by defendants,
6  however, provided that attempts to contact plaintiffs were made as required by § 2923.5. *Id.*
7  Thus, there were no facts alleged that contradicted defendants' contention that they fulfilled their
8  obligation to diligently attempt to contact plaintiffs.

In contrast, here, Plaintiffs have alleged sufficient facts to call into question the validity of Defendants' statements that it fulfilled its requirement to diligently attempt to contact Plaintiffs pursuant to California Civil Code § 2923.5.  Specifically, Plaintiffs allege that they

> have maintained the same telephone number since the inception of the Subject Loan.  PNC and HSBC were well aware of these telephone numbers as evidenced by the fact that PNC was able to contact Plaintiffs on multiple occasions for the purpose of collecting payments.  All of Plaintiffs' phones were equipped with automated answering machines and caller identification but Plaintiffs never received any messages from PNC or HSBC indicating that they had a desire to speak to Plaintiffs about their financial status and alternatives to foreclosure.  Plaintiffs also never received a certified letter [from] PNC or HSBC stating that they were trying to contact Plaintiffs.  As a result the due diligence requirements of California Civil Code § 2923.5(g) were also not met prior to the recording of the NOD.

(ECF No. 24 at ¶ 21.)  The Court finds that these allegations are sufficient to cause doubt as to whether Defendants have met the requirements set forth in California Civil Code § 2923.5.  Furthermore, if Plaintiffs' allegations are true, Defendants' NOD would be invalid.[3] *See Mabry v. Superior Court*, 185 Cal. App. 4th 208, 223 (2010) ("If section 2923.5 is not complied with, then there is no valid notice of default and, without a valid notice of default, a foreclosure sale

---

[3] The Court notes that Defendants' briefing in support of its motion to dismiss primarily focuses on the validity of the NOD and does not address whether Defendants in fact complied with the statute in contacting or diligently attempting to contact Plaintiffs. Defendants do allege such facts in their opposition to Plaintiffs' motion for preliminary injunction.  The Court cannot import Defendants allegations from its opposition to its motion to dismiss.  As such, the Court does not address these allegations in discussing the motion to dismiss. However, the Court notes that even had such allegations been made in support of Defendants motion to dismiss, the facts alleged by both parties create issues of material fact that cannot be disposed of on a 12(b)(6) motion. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

cannot proceed.").

In addition, Defendants argue that Plaintiffs' claim fails because the NOD's language is sufficient in that it tracks the language set forth in § 2923.5. (ECF No. 29-1 at 5.) Defendants seem to misinterpret Plaintiffs' argument as being that the NOD's language is deficient. However, Plaintiffs do not argue that the language is insufficient, instead they argue that the NOD is invalid because the contact requirements set forth in § 2923.5(b) have not been met−i.e. Defendants have not made contact or diligently attempted to do so under § 2923.5(e). *See* Mabry, 185 Cal. App. 4th at 232. "When a plaintiff's allegations dispute the validity of defendant's declaration of compliance in a Notice of Default as here, the plaintiff has plead 'enough facts to state a claim to relief that is plausible on its face.'" *Barrionuevo v. Chase Bank, N.A.*, 885 F. Supp. 2d 964, 977 (N.D. Cal. 2012) (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009)). As such, Plaintiffs have alleged sufficient facts to support a claim for relief, and thus, Defendants' motion to dismiss (ECF No. 29) is **DENIED**.

### b. Preliminary Injunction

As referenced above, in order to obtain a preliminary injunction, Plaintiffs must establish that they are likely to succeed on the merits, likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in their favor, and that an injunction is in the public interest. *See Winter*, 555 U.S. at 20. This Court will address each of these requirements in turn.

#### 1. Likelihood of Success

Plaintiffs have the burden to show that they are likely to succeed on their claims against Defendants. To succeed they must show that Defendants either failed to make contact with them or failed to comply with the diligence alternative set forth in subsection (e). *See* Cal. Civil Code § 2923.5. Defendants counter that Plaintiffs are unlikely to prevail on the merits because Defendants had actual contact with Plaintiffs and thus satisfied the requirements of the statute. (Def.s' Supp. Opp'n., ECF No. 32 at 3−6.) In support of their argument, Defendants allege that (1) Plaintiff Thomas Weber contacted PNC multiple times in February and March, 2012; (2) PNC sent Plaintiffs letters explaining their alternatives to foreclosure; (3) PNC left one

8

message for Plaintiffs on their answering machine; and (4) reviewed Plaintiffs' loan for a modification. (ECF No. 32 at 5.)  Defendants have also submitted the Declaration of Brian Arthur, who serves as custodian of records for PNC Bank. (ECF No. 32-2.) In his declaration, Brian Arthur states

> 5. PNC's records reflect that on January 23, 2012, PNC sent a letter to Thomas A. Weber informing him that he was delinquent on the Subject Loan, requesting him to contact PNC to assess his financial status, providing options to avoid foreclosure, and providing contact information for a HUD- approved counseling agency for financial counseling (including but not limited to the following dates. . . .
>
> 6. PNC's records reflect that on or about February 17, 2012, Thomas A. Weber called PNC regarding his financial status at which time PNC assessed his financial status, discussed his options to avoid foreclosure, and reviewed the feasibility of a repayment plan. During this telephone call, PNC also advised Thomas A. Weber that the information he provides pursuant to a workout package will be reviewed by PNC upon receipt. Additionally, PNC provided Thomas A. Weber with contact information for a HUD-certified housing counseling agency and informed him of his right to request a second meeting to further discuss his financial situation and options. . . .
>
> 7. PNC's records reflect that on or about February 20, 2012, PNC called Thomas A. Weber and left a message on his answering machine.
>
> 8. PNC's records reflect that on or about March 1, 2012, Thomas A. Weber called PNC to accept the follow up meeting to further discuss his financial situation and options that was offered on February 17, 2012.
>
> 9. PNC's records reflect that on or about March 26, 2012, Thomas A. Weber called to inform PNC that he would be submitting documents for loan modification review by March 30, 2012.
>
> 10. PNC's records reflect that in April 2012, Thomas A. Weber was reviewed for a loan modification based on documents he submitted. Thomas A. Weber was denied a loan modification under the Making Home Affordable Program on April 18, 2012. PNC's records reflect it sent Thomas A. Weber written notice of this denial on or about April 18, 2012.

(ECF No. 32-2 at 3−4.) In support of Brian Arthur's statements, Defendants have submitted copies of the letters that PNC Bank sent to Plaintiff Thomas Weber memorializing phone conversations between PNC Bank and Thomas Weber. (*See* ECF No. 32-2 at 6−16.)

Plaintiffs contend that the evidence presented by Defendants is incomplete and inadmissible hearsay. (Pls.' Reply, ECF No. 36 at 3.) In addition, Plaintiffs argue that "even assuming the facts within the Arthur Declaration are both admissible and accurate, taking calls from Plaintiffs in which Plaintiffs inquired into alternatives to foreclosure, sending Plaintiffs a letter describing alternatives to foreclosure and reviewing Plaintiffs [loan] for a modification does not . . . satisfy the personal contact requirements of . . . § 2923.5(a)(2)" because the lender is required "to contact the borrower, not the other way around." (ECF No. 36 at 3.)

First, the Court finds that it may consider the evidence provided by Defendants. The Supreme Court has held that "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id.* Accordingly, the Court finds that the documentation offered by Defendants support their contention that contact was made with Plaintiff Thomas Weber prior to the NOD. Furthermore, the Court notes that Plaintiffs have the burden of showing a likelihood of success on the merits and have not offered any evidence to refute Defendants' allegations. Thus, even if this Court did not consider Defendants' evidence, Plaintiffs' allegations alone do not meet the standard of showing a likelihood of success.

Lastly, Plaintiffs' contention that the contact between Plaintiff Thomas Weber and PNC Bank is insufficient to meet the contact requirement under § 2923.5(a)(2) because Plaintiffs initiated the contact is likely unmeritorious. *See Pey v. Wachovia Mortg. Corp*., 11-2922 SC, 2011 WL 5573894, at *4−5 (N.D. Cal. Nov. 15, 2011) (finding that the mortgagor likely satisfied its duties under § 2923.5 where a plaintiff testified that he (1) received phone calls and certified letters from Wachovia regarding his loan, but that these calls and letters did not offer him the option of loan modification; (2) admitted that modification discussions took place but contends that he broached the subject; and (3) characterized the certified letters as demands for payment, but concedes that the letters contained additional information that he cannot recall as well as a

telephone number for a Wachovia representative.)  Based on the foregoing, the Court finds that this factor does not weigh in favor of granting Plaintiffs' request for preliminary injunction.

### 2. Irreparable Harm Absent Injunctive Relief

"Preliminary injunctive relief is available only if plaintiffs 'demonstrate that irreparable injury is likely in the absence of an injunction.'" *Johnson v. Couturier*, 572 F.3d 1067, 1081 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 22).  Plaintiffs are asking for injunctive relief to stop the foreclosure of their home.  In Plaintiffs' motion, they contend that had Defendants complied with § 2923.5, "Plaintiff would not be facing a Trustee's Sale." (ECF No. 30 at 4.)  However, the only remedy for a breach of § 2923.5 is to postpone the sale of the property. *See Mabry*, 185 Cal. App. 4th at 223.  Section 2923.5 does not require that a lender implement alternatives to a foreclosure, only that the parties explore alternative options. *See Davenport v. Litton Loan Servicing*, *LP*, 725 F. Supp. 2d 862, 877 (N.D. Cal. 2010).  Here, Defendants have already determined that Plaintiffs did not qualify for an alternative action.  (ECF No. 32-2 at 4 ¶ 10.)  Furthermore, Plaintiffs have failed to establish that they are entitled to prevent foreclosure.  Moreover, delaying the foreclosure would cause Defendants harm because it would continue to delay their ability to recoup the loss that they have sustained from Plaintiffs failure to pay the mortgage on the property.  Thus, these facts weigh against enjoining Defendants from foreclosing on the property.

### 3. Balance of Equities

"The purpose of preliminary injunctive relief is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined." *Heflebower v. U.S. Bank Nat. Ass'n*, No. CV F 13-1121 LJO MJS, 2013 WL 3864214, at *18 (E.D. Cal. July 23, 2013) (citing *Univ. of Tex.*, 451 U.S. at 395).  Plaintiffs allege that Defendants have acted fraudulently and thus should not benefit from their actions by foreclosing on the property.  (ECF No. 30 at 9.)  However, as discussed above, Plaintiffs have not met their burden of showing that Defendants acted fraudulently.  As such, this factor does not weigh in favor of granting Plaintiffs a preliminary injunction.

        4.  <u>Public Interest</u>

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 376–77 (quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982)). "The public interest analysis for the issuance of a preliminary injunction requires [the Court] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Indep. Living Ctr., So. Cal. v. Maxwell–Jolly*, 572 F.3d 644, 659 (2009) (internal quotation marks and citations omitted), *vacated and remanded on other grounds*, 132 S. Ct. 1204 (2012). Plaintiffs have failed to allege any public interest that warrants the imposition of this extraordinary remedy.

### IV.   CONCLUSION

For the foregoing reasons, the Court hereby

1. **DENIES** Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 29); and
2. **DENIES** Plaintiffs' Motion for Preliminary Injunction (ECF No. 30).

**IT IS SO ORDERED.**

**Dated: August 15, 2013**

_____
Troy L. Nunley
United States District Judge